**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Armando A. Ortiz
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **RICHARD SHUGARS and JAMES LEE,** individually and on behalf of all others similarly situated, <br><br>          **Plaintiffs,** <br>    **-against-** <br><br> **MASONITE CORPORATION and MASONITE INTERNATIONAL CORPORATION,** <br><br>          **Defendants.** | **No: 3:22-cv-1237 (MAD/ML)** <br><br><br> **CLASS AND COLLECTIVE ACTION COMPLAINT** |

Richard Shugars and James Lee ("Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves, and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1.      This lawsuit seeks to recover underpayment caused by untimely wage payments and other damages for Plaintiffs and similarly situated non-exempt hourly positions including but not limited to fork lift operators, machine operators, material handlers, painters, general laborers, assemblers, stockers, and similarly situated hourly warehouse workers (collectively, "Warehouse Workers") who work or have worked for Masonite Corporation and Masonite International Corporation (together, "Masonite" or "Defendants") in New York State.

2.      Headquartered in Tampa, Florida, Masonite is "a leading global designer,

manufacturer, marketer and distributor of interior and exterior doors for new the new construction and repair, renovation and remodeling sectors of the residential and non-residential building construction markets."[1]

3.      According to its central website – Masonite.com – Defendants own and operate over 38 manufacturing plants across the United States and Canada. In New York, Masonite owns and operates a distribution warehouse located at 970 US-11, Kirkwood, New York 13795.

4.      At all relevant times, Defendants have compensated Plaintiffs and all other Warehouse Workers in New York on a bi-weekly basis.

5.      Despite being manual workers, Defendants have failed to properly pay Plaintiffs and other Warehouse Workers in New York their wages within seven calendar days after the end of the week in which these wages were earned.

6.      In this regard, Defendants have failed to provide timely wages to Plaintiffs and all other similarly situated Warehouse Workers in New York.

7.      Manual Workers as contemplated by NYLL § 191 are "dependent upon their wages for sustenance." *See People v. Vetri*, 309 N.Y. 401, 405 (1955)

8.      As such, the failure to provide wages owed to Plaintiffs and all other similarly situated Manual Workers, according to NYLL § 191 constitutes an "especially acute injury." *See Caul v. Petco Animal Supplies, Inc.*, No. 20 Civ. 3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing *Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1146 (N.Y. 1st Dept. 2019).

9.      Plaintiffs bring this action on behalf of themselves and all other similarly situated Warehouse Workers in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23") to

---

[1] https://investor.masonite.com/Investors/Overview/default.aspx

remedy violations of the New York Labor Law, Article 6, §§ 190 *et seq.* ("NYLL"), and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

10.     Plaintiffs, individually, also bring an action for wrongful termination under NYLL 201-d, *as amended*, for their illegal termination due to positive THC drug tests in violation of the recently enacted New York Marijuana Regulation and Taxation Act ("MRTA").

## THE PARTIES

**Plaintiffs**

**Richard Shugars**

11.     Richard Shugars ("Shugars") is an adult individual who is a resident of the State of New York.

12.     Shugars was employed by Masonite as a forklift operator – a Warehouse Worker – at their Kirkwood, New York manufacturing plant from approximately August 2016 to August 2, 2021.

13.     Shugars is a covered employee within the meaning of the NYLL.

**James Lee**

14.     James Lee ("Lee") is an adult individual who is a resident of the State of New York.

15.     Lee was employed by Masonite as a forklift operator – a Warehouse Worker – at their Kirkwood, New York manufacturing plant from approximately May 2017 to July 8, 2021.

16.     Lee is a covered employee within the meaning of the NYLL.

**Defendants**

**Masonite Corporation**

17.     Masonite Corporation is a foreign business corporation organized and existing under the laws of Delaware.

18.     Masonite Corporation's principal office and corporate headquarters is located at 201 North Franklin Street, Suite 300, Tampa, Florida 33602. Its service of process addressed listed in the New York State Department of Corporations is Corporate Creation Network, Inc., 15 North Mills Street, Nyack, New York 10960.

19.     Masonite Corporation was and is a covered employer within the meaning of the NYLL, and at all times relevant, employed Plaintiffs and similarly situated employees.

20.     Masonite Corporation has maintained control, oversight, and direction over Plaintiffs and similar employees, including timekeeping, payroll, and other employment practices that applied to them.

21.     Masonite Corporation applies the same employment policies, practices, and procedures to all Warehouse Workers in its operation, including policies, practices, and procedures with respect to payment of wages.

22.     Based upon corporate disclosure statements in other litigation, Masonite Corporation is admitted to be a wholly owned subsidiary of Masonite International Corporation, a publicly traded company.

**Masonite International Corporation**

23.     Masonite International Corporation a foreign business corporation organized and existing under the laws of British Columbia, Canada.

24.     Masonite International Corporation is a publicly traded corporation, currently training under DOOR on the New York Stock Exchange.

25.     Masonite International Corporation lists its principal address as 1242 East 5th Avenue, Tampa, Florida 33605. Its registered agent name and address in the State of Florida is Corporate Creations Network, Inc., 801 US Highway 1, North Palm Beach, Florida 33408.

26.     Masonite International Corporation was and is a covered employer within the meaning of the NYLL, and at all times relevant, employed Plaintiffs and similarly situated employees.

27.     Masonite International Corporation has maintained control, oversight, and direction over Plaintiffs and similar employees, including timekeeping, payroll, and other employment practices that applied to them.

28.     Masonite International Corporation applies the same employment policies, practices, and procedures to all Warehouse Workers in its operation, including policies, practices, and procedures with respect to payment of wages.

## JURISDICTION AND VENUE

29.     This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against the Defendants in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs, and Plaintiffs and the members of the proposed class are citizens of states different from that of Defendants.

30.     There are over 100 members in the proposed class.

31.     Defendants are subject to personal jurisdiction in New York.

32.     Venue is proper in the Northern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants conduct business in this District.

33.     This Court has subject matter jurisdiction over Plaintiffs' individual state law claims pursuant to 28 U.S.C. § 1367.

## NEW YORK CLASS ACTION ALLEGATIONS

34.     Plaintiffs bring the First Cause of Action, a NYLL claim, under Rule 23 of the

Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of:

> All persons who work or have worked as Warehouse Workers
> for Masonite in New York between March 23, 2015,[2] and the
> date of final judgment in this matter (the "New York Class").

35.     The members of the New York Class are so numerous that joinder of all members

is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

36.     There are more than 100 members of the New York Class.

37.     Plaintiffs' claims are typical of those claims that could be alleged by any member

of the New York Class, and the relief sought is typical of the relief which would be sought by each

member of the New York Class in separate actions.

38.     Plaintiffs and the New York Class have all been injured in that they have been

uncompensated, under-compensated, or untimely compensated due to Defendants' common

policies, practices, and patterns of conduct. Defendants' corporate-wide policies and practices

affected everyone in the New York Class similarly, and Defendants benefited from the same type

of unfair and/or wrongful acts as to each member of the New York Class.

39.     Plaintiffs are able to fairly and adequately protect the interests of the New York

Class and have no interests antagonistic to the New York Class.

40.     Plaintiffs are represented by attorneys who are experienced and competent in both

class action litigation and employment litigation and have previously represented many plaintiffs

and classes in wage and hour cases.

---

[2] This class period is due to a tolling agreement signed by the Parties on November 5, 2021, which tolled the Class's NYLL statute of limitations from March 20, 2015. This tolling agreement was cancelled on November 18, 2022.

41.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

42.     Common questions of law and fact exist as to the New York Class that predominate over any questions only affecting Plaintiffs and/or each member of the New York Class individually and include, but are not limited to, the following:

> (a) whether Defendants correctly compensated Plaintiffs and the New York Class on a timely basis.

## PLAINTIFFS' FACTUAL ALLEGATIONS

43.     Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiffs, individually, as follows:

**Richard Shugars**

44.     Shugars was employed as a forklift operator at Defendants' manufacturing plant located in Kirkwood, New York from approximately August 2016 to August 2, 2021.

45.     During his employment, Shugars was a non-exempt worker paid on an hourly basis.

46.     Furthermore, during his employment, over twenty-five percent of Shugar's duties were physical tasks, including but not limited to: 1) cleaning and sweeping work areas, including disposing of broken pallets, 2) operating a forklift in the warehouse, 3) using forklift to move pallets of doors throughout the warehouse, 4) physically loading pallets on to the forklift and doors on to the pallets, and 5) banding pallets together and using wrapper machines to ready pallets for shipment.

47.     Despite regularly spending more than twenty-five percent of his shift performing these physical tasks, Shugars was compensated by Defendants on a bi-weekly basis.

48.     For example, for the week beginning on July 5, 2021 and ending on July 18, 2021, Defendants paid Shugars his lawfully earned wages on July 22, 2021. *See* **Exhibit A**, Shugars Paystub.

49.     Defendants failed to pay Shugars wages earned from July 5, 2021 through July 11, 2021 by July 18, 2021, as required by NYLL § 191(1)(a).

50.     As a result of Defendants' untimely wage payments, Shugars was underpaid for the period of July 5, 2021 through July 11, 2021, and for every corresponding period where Defendants paid him on an untimely basis

51.     In or around late July 2021, Shugars reported to work normally and not under the influence of any substances.

52.     Unknown to Shugars at the time, a coworker misplaced the charging power cord for the forklift on to the mast of the machine. Shugars did not notice this and began to back the forklift away from the power charging station to start his workday. In doing so, Shugars accidentally damages the charging unit.

53.     Upon this incident, Shugars was ordered to take a drug test. Shugars complied without issue, knowing he was not under the influence of any substances at this time.

54.     When providing the drug test, Shugars informed the representative that he did use legal CBD/THC gummies on occasion when at home and away from work.

55.     Defendants did not suspend Shugars, nor require him to go home that day. He remained on the job and performed his job duties in a satisfactory manner.

56.     Approximately a week after this drug test, the results returned with a positive test

for THC.

57.     Defendants terminated Shugars due to this drug test, despite his legal use of CBD/THC edibles off the employer's premises and away from his work hours.

58.     Defendants terminated Shugars despite New York State's recently enacted Marijuana Regulation and Taxation Act, which legalized the use of cannabis for adults 21 years of age or older, and amended NYLL § 201-d to prohibit any discrimination based upon an individual's use of cannabis outside of work hours, off the employer's premises, and without use of the employer's equipment or other property.

59.     Any purported non-discriminatory reasons for Shugars' termination are pretext.

60.     Due to Defendants' termination, Shugars has suffered economic damages.

**James Lee**

61.     Lee was employed as a forklift operator at Defendants' manufacturing plant located in Kirkwood, New York from approximately May 2017 to July 8, 2021.

62.     During his employment, Lee was a non-exempt worker paid on an hourly basis.

63.     Furthermore, during his employment, over twenty-five percent of Lee's duties were physical tasks, including but not limited to: 1) cleaning and sweeping work areas, including disposing of broken pallets, 2) operating a forklift in the warehouse, 3) using forklift to move pallets of doors throughout the warehouse, 4) physically loading pallets on to the forklift and doors on to the pallets, and 5) banding pallets together and using wrapper machines to ready pallets for shipment.

64.     Despite regularly spending more than twenty-five percent of his shift performing these physical tasks, Lee was compensated by Defendants on a bi-weekly basis.

65.     Like Shugars, as a result of Defendants' untimely wage payments, Lee was

underpaid for every corresponding period where Defendants paid him on an untimely basis

66.     Like Shugars, Lee was made to submit to a urine drug test in late June 2021 after his forklift caught a piece of door trim and broke it.

67.     Lee was not under the influence of any substances while at work on the day in question.

68.     After damages the trim, Masonite require Lee to undergo a drug test. Lee informed them they would find THC in his system because he uses it during his off hours due to symptoms of depression.

69.     Based on information and belief, Defendants did not suspend Lee or require him to go home that day. He remained on the job and performed his job duties in a satisfactory manner.

70.     When the test results came back, Defendants terminated Lee for a positive THC drug test, despite his legal use of THC off the employer's premises and outside of work hours.

71.     Defendants terminated Lee despite New York State's recently enacted Marijuana Regulation and Taxation Act, which legalized the use of cannabis for adults 21 years of age or older, and amended NYLL § 201-d to prohibit any discrimination based upon an individual's use of cannabis outside of work hours, off the employer's premises, and without use of the employer's equipment or other property.

72.     Any purported non-discriminatory reasons for Lee's termination are pretext.

73.     Due to Defendants' termination, Lee has suffered economic damages.

**FIRST CAUSE OF ACTION**
**New York Labor Law – Failure to Pay Timely Wages**
**(Brought on behalf of Plaintiffs and the New York Class)**

74.     Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

75.     The timely payment of wages provisions NYLL § 191 and its supporting regulations apply to Defendants and protect Plaintiffs and the New York Class.

76.     Defendants failed to pay Plaintiffs and the New York Class on a timely basis as required by NYLL § 191(1)(a), which resulted in Plaintiffs and the New York Class being underpaid.

77.     Due to Defendants' violations of the NYLL, Plaintiffs and the New York Class are entitled to recover from Defendants the amount of the underpayments caused by their untimely wage payments as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest as provided for by NYLL § 198.

**SECOND CAUSE OF ACTION**
**New York Labor Law – Unlawful Termination Due to Cannabis Use – NYLL § 201-d**
**(Brought on behalf of Plaintiffs, individually)**

78.     Plaintiffs realleges and incorporates by reference all allegations in all preceding paragraphs.

79.     Defendants are covered employers under the NYLL.

80.     Pursuant to NYLL § 201-d, an employer may not discharge or otherwise discriminate against an individual as a result of an individual's use of cannabis in accordance with state law outside of work hours, off of the employer's premises, and without the use of the employer's equipment or other property.

81.     Plaintiffs used lawful cannabis products outside of work hours and off of the

11

employer's premises.

82.    Plaintiffs were not under the influence of cannabis or impaired by the use of cannabis while working at the time of the incidents involving the forklifts.

83.    Defendants' policy of requiring drug tests and utilizing positive cannabis results for termination violates the NYLL.

84.    Defendants violated the NYLL by terminating Plaintiffs for positive THC tests.

85.    As a result of Defendants' actions, Plaintiffs have suffered economic damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually, and on behalf of all other similar persons, respectfully request that this Court grant the following relief:

A.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.    Designation of Plaintiffs as representatives of the New York Class and counsel of record as Class Counsel;

C.    Liquidated damages in the amount of the untimely wage payments pursuant to the NYLL;

D.    Equitable relief and any damages allowable by law arising from Defendants' termination of Plaintiffs' employment;

E.    Prejudgment and post-judgment interest;

F.    Reasonable attorneys' fees and costs of the action; and

G.    Such other relief as this Court shall deem just and proper.

Dated:  New York, New York
         November 21, 2022


                              Respectfully submitted,


                              /s/ Brian S. Schaffer
                              Brian S. Schaffer

                              **FITAPELLI & SCHAFFER, LLP**
                              Brian S. Schaffer
                              Armando A. Ortiz
                              28 Liberty Street, 30th Floor
                              New York, NY 10005
                              Telephone: (212) 300-0375

                              *Attorneys for Plaintiffs and*
                              *the Putative Class*